IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

      Plaintiff,

  v.

DIOP FITZGERALD AND LANDRIFF
MACKLIN,

      Defendants.

Criminal No. 18-072
ELECTRONICALLY FILED

**MEMORANDUM ORDER OF COURT DENYING DEFENDANT FITZGERALD'S MOTION TO SUPPRESS WIRETAPS (DOC. NO. 81)**

Before the Court is Defendant Fitzgerald's Motion to Suppress Wiretaps. Doc. no. 81. The Government filed a Response opposing the Motion. Doc. no. 109. For the reasons that follow, the Court will deny Defendant Fitzgerald's Motion to Suppress Wiretaps.

Evidence against Defendant Fitzgerald includes intercepted conversations obtained via wiretap surveillance. Miscellaneous case number 17-229(e). The wiretap surveillance was authorized by United States District Judge David Stewart Cercone on October 21, 2017, and was supported by 106-page Affidavit sworn by a DEA task force agent, Michael C. Warfield.

Defendant contends that the wiretap application failed to meet the "necessity" requirement as required by 18 U.S.C. § 2518(1)(c). This portion of what is commonly known as the "Wiretap Act" reads as follows:

> (1) Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

         \*     \*     \*

> (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

18 U.S.C. § 2518(1)(c).

As both the Government and Defendant Fitzgerald admit in their respective submissions, the necessity requirement under the Wiretap Act does not impose a great statutory burden on the Government. *United States v. Armocida,* 515 F.2d 29, 38 (3d Cir. 1975). Applications "whose sole bases are general declarations and conclusory statements by the affiants" and "[t]he use of 'boiler plate' and the absence of particulars in requests for wiretap authorizations have not been permitted." *U.S. v. Vento*, 533 F.2d 838, 849-50 (3d Cir. 1976). However, "[t]here is no requirement that every investigative methodology be exhausted … [and] [i]nvestigators are not obliged to try all theoretically possible approaches. It is sufficient that the government show that other techniques are impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues of investigation." *Id.* at 849. Simply stated, this case law suggests that a pragmatic approach must be taken, and the "necessity" of a wiretap must be evaluated given the specific circumstances and scope of the investigation.

In this case, the application in question at Misc. No. 17-229(e), provides a sufficient factual basis to demonstrate the necessity of the wiretap. Specifically, Section VII of the application, which is entitled "Assessment of Requisite Necessity" provides pages of foundation relating to the necessity of the wiretap. For example, paragraph 106 reads in pertinent part:

> 106. As specifically stated in Affidavit #5 and further corroborated in this Affidavit, this Organization is a multi-level DTO, with coconspirators who are well-versed in the tactics utilized to facilitate the illegal distribution of narcotics. The simultaneous utilization of multiple mobile telephones, the continual switching of mobile telephones, the disciplined utilization of coded language, the face-to-face meetings, their cautious mode of operation, the longevity of their illegal drug trafficking activities,

>   amongst other tactics, are clear indications that the members in this
>   Organization arc determined to continue their illegal drug trafficking
>   activities unimpeded. . . .

The remainder of paragraph 106 and paragraphs 107 through and including 109, specifically reference Defendant Fitzgerald and the need for a wiretap with respect to his phone(s) given his alleged role in the Organization and the manner in which the Organization was operating.

Moreover, Section VIII of the Application, entitled "Alternative Investigative Techniques," describes other modalities of investigation. By way of example, and as raised by Defendant Fitzgerald in his Motion to Suppress, one modality known as pen register and toll record data was discussed in paragraphs 110 through 111. The application makes it clear that although the analysis of pen register and toll record data, among other investigative tools, was helpful and would continue to be utilized to further the investigation, without the wiretap, the pen register and toll record data analyses alone would not give the investigators the opportunity to gather enough evidence "sufficient for prosecution." The application is replete with additional examples of other modalities of investigation that were being used by investigators, and yet each method did not yield the necessary evidence to pursue prosecution.

Based upon this Court's review of the Affidavit – which was attached as Exhibit A (under seal) to Defendant Fitzgerald's Motion to Suppress Wiretaps – which was also filed at misc. no. 17-229(e), the Court herby DENIES Defendant Fitzgerald's Motion to Suppress Wiretaps. Doc. no. 81.

**SO ORDERED, this 2nd day of August, 2018.**

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge

cc: All ECF Registered Counsel of Record